**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CINEMA ART THEATER, INC.,**

                **Plaintiff,**            **1:09-cv-413**
                                                  **(GLS\RFT)**

        **v.**

**CITY OF TROY; MAYOR HENRY**
**TUTUNJIAN; FIRE CHIEF THOMAS**
**O. GARRETT; CITY ENGINEER**
**RUSS REEVES; JOHN DOE;** and
**RICHARD ROE,**

                **Defendants.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Kindlon, Shanks Law Firm      TERENCE L. KINDLON, ESQ.
74 Chapel Street
Albany, NY 12207

**FOR THE DEFENDANTS:**

Pattison, Sampson Law Firm     DONALD J. SHANLY, ESQ.
22 First Street                      JONATHAN G. SCHOPF, ESQ.
P.O. Box 208                      MICHAEL E. GINSBERG, ESQ.
Troy, NY 12181-0208

**Gary L. Sharpe**
**District Court Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Cinema Art Theater, Inc., an adult movie theater, commenced this action pursuant to 42 U.S.C. §§ 1982, 1983, 1985, and 1988 alleging violations of its constitutional rights in connection with defendants' removal of its marquee. (2d Am. Compl., Dkt. No. 36.) Pending is defendants' motion for summary judgment, (Dkt. No. 63), and the Theater's cross-motion for partial summary judgment, (Dkt. No. 66). For the reasons that follow, defendants' motion is granted in part and denied in part, and the Theater's cross-motion is denied.

## II. Background

Until its closure in 2006 for alleged violations of the Troy City Code, the Cinema Art Theater, Inc., a New York corporation, was in the business of showing adult movies and selling adult novelty items at its property at 285-289 River Street, Troy, New York. (Defs. SMF ¶ 1, Dkt. No. 63:2; Pl. Resp. Mem. of Law at 2, Dkt. No. 66:2.) Jan DeGroote is the sole shareholder and president of the Theater. (*See* Defs. SMF ¶ 1, Dkt. No. 63:2.)

On April 13, 2006, defendants Russ Reeves, City Engineer for the

City of Troy, and Thomas O. Garrett, Fire Chief for the City of Troy, visited

the Theater to investigate alleged complaints that bricks and masonry were

falling in the rear of the building.  (*See id.* at ¶¶ 2, 4.)  During the

investigation, which was comprised of a visual inspection lasting

approximately thirty minutes, Reeves claims to have noticed that the

Theater's marquee, which overhangs a heavily-traveled pedestrian

sidewalk, was showing signs of deterioration.  (*See id.* at ¶ 6.)  In an April

13 letter detailing his observations, Reeves stated as follows:

> Using the Fire Department Aerial Tower Truck, we evaluated
> the front marquee signage and attachments.  There is evidence
> of moisture penetration in flashed and caulked joints....  There
> are two deteriorated and rusted wire cables that are supporting
> the marquee and the signage....  The cables are attached to the
> building with a single bolt into the masonry joint as shown.  The
> additional chain attachment ... is not in tension and is offering
> no supplemental support to the wider portion of the marquee
> and sign.  This methodology of attachment is inadequate and in
> addition to the structural components that are supporting this
> marquee are deteriorated.  For public safety, we have closed off
> the westerly sidewalk with in [sic] this marquee area along River
> St. and are requiring you to remove this marquee within a
> twenty-four hour period; otherwise, the City will remove it and
> invoice you accordingly with a fine and an issue to appear in
> court.

(Kindlon Aff., Ex. F, April 13 Letter at 4-5, Dkt. No. 66:10.)  According to

defendants, this letter was delivered to the building manager at the Theater

that day and was also "sent to [DeGroote] via facsimile." (Defs. SMF ¶ 6, Dkt. No. 63:2.) A copy of the letter was also "cc'ed" to, among others, Troy Mayor Henry Tutunjian. (*See* Kindlon Aff., Ex. F, April 13 Letter at 6, Dkt. No. 66:10.) In addition to delivering the letter, defendants further claim that Reeves personally spoke with DeGroote that day, informing him of the condition of the marquee. (*See* Defs. SMF ¶¶ 6-7, Dkt. No. 63:2.) According to DeGroote, however, he never received a copy of the April 13 letter or had any conversation with Reeves or with any other City of Troy employee as to the condition or removal of the marquee. (*See* Pl. Resp. SMF ¶ 7, Dkt. No. 66:1; Pl. Resp. Mem. of Law at 3, Dkt. No. 66:2.) Instead, DeGroote claims he received notice of the situation on the evening of April 13, when he "received a telephone call from his then-attorney Michael Deal, who explained that the City of Troy was going to demolish the marquee the next day." (Pl. Resp. Mem. of Law at 4, Dkt. No. 66:2.)

The next day, April 14, defendants claim that a contractor hired by DeGroote came to City Hall and met with Reeves and his staff. (*See* Defs. SMF ¶ 8, Dkt. No. 63:2). According to defendants, "the contractor refused to identify himself, sign for the necessary permit to begin work on the marquee or to cooperate with city officials in giving them the necessary

4

information to fill out the permit form." (*See id.* at ¶ 8.) Reeves testified

that based on these actions he "determined that the repair work would not

begin on the marquee within the specified 24 hour period." (*Id.* at ¶ 9.)

Thus, he explained, "in order to assure the safety of the public, and given

the nature of the situation, [he] gave the order to remove the marquee from

the building." (*Id.*) DeGroote denies ever "retain[ing] or send[ing] a

contractor to pick up a permit from City Hall." (Pl. Resp. SMF ¶ 8, Dkt. No.

66:1.)

In line with his decision, Reeves directed Fire Chief Garrett to arrange

for a demolition company to remove the marquee on April 14, which Garrett

did. (*See* Defs. SMF ¶ 11, Dkt. No. 63:2.) That day, however, prior to the

marquee's removal, DeGroote hired two engineers—Micheal J. Kenneally

of Shamrock Engineering P.C. and Neil Weisel of Ryan-Biggs Associates,

P.C.—to inspect the structural integrity of the marquee. (Kindlon Aff., Exs.

H & I, Dkt. Nos. 66:12 & 66:13.) Upon arrival at the Theater that morning,

the engineers initially observed that there were no barricades in place to

prevent the public from walking below the marquee. (*See id.*) With respect

to their inspection of the marquee itself, the engineers were able to observe

through a hole in the Theater's ceiling that the marquee appeared to be

supported by at least one steel beam.  (*See id.*)  Based on this and other observations, the engineers concluded that the chains and wires noted by the City of Troy in its report as indicating structural instability were likely not required for the structural integrity of the marquee.  (*See id.*)  As to the cables, for example, Mr. Kenneally stated that while "the cables were assumed to support the signage and the marquee, upon actually inspecting the structure, it would have been apparent that the sign was independent structure and therefore, the cables only supported a portion of the load." (Kindlon Aff., Ex. I at 2, Dkt. No. 66:13.)  And with respect to the chains, Mr. Kenneally stated that his "observation indicate[d] that chains were not intended to be or at the very least, not acting as structural elements, but rather decorations," explaining that "[i]f the chains were required for the continued structural integrity of the Marquee, they would have been taught [sic] [, which they were not,] and the Marquee would have been significantly out of level[, which it was not]."  (*Id.* at 2-3.)  Ultimately, Mr Kenneally opined that "the Marquee was structurally sound and in absolutely no danger of failure or collapse, partial or otherwise."  (*Id.*)

Mr. Wiesel concluded similarly, stating that "the sag in the ornamental chains indicated they were under minimal tension load and therefore the

canopy was likely being supported by structural framing hidden within the architectural finishes." (Kindlon Aff., Ex. H at 4, Dkt. No. 66:12.) Mr. Wiesel further stated that "[a]lthough the upper wire support cables appeared to be in tension, they appeared to be too light to carry the weight of the marquee," concluding that "[s]ince the chains were sagged and the wire support cables were inadequate to support the canopy weight, the marquee was likely being supported by structural framing hidden within the architectural finishes of the marquee." (*Id.*)

As planned, the marquee was removed on the evening of April 14 and was stored at the City of Troy Fire Station where it was eventually picked up by a representative of DeGroote. (*See* Defs. SMF ¶¶ 12, 14, Dkt. No. 63:2.) To date, the marquee has not been replaced or restored, and the Theater has not reopened since its closing in March 2006. (*See id.*)

On April 8, 2009, DeGroote commenced this action against Reeves, Fire Chief Garrett, the City of Troy, City of Troy Mayor Henry Tutunjian, John Doe, and Richard Roe, alleging violations of his federal constitutional and statutory rights. (Dkt. Nos. 1, 7.) On June 25, 2010, this court granted DeGroote's motion to substitute the Cinema Art Theater, Inc. as plaintiff,

and, on June 29, the complaint was amended accordingly.  (Dkt. Nos. 35,

36.)  On October 14, 2010, defendants moved for summary judgment, (Dkt.

No. 63), and the Theater's cross-moved for partial summary judgment

shortly thereafter, (Dkt. No. 66).

### III. <u>Standard of Review</u>

The standard for the grant of summary judgment is well established

and will not be repeated here.  For a full discussion of the standard, the

court refers the parties to its previous opinion in *Bain v. Town of Argyle*,

499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

### IV. <u>Discussion</u>

### A.    <u>Section 1982 Claim</u>

In its complaint, the Theater states, without explanation, that

defendants violated its rights under 42 U.S.C. § 1982.  Section 1982

provides that "[a]ll citizens ... shall have the same right, in every State and

Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease,

sell, hold, and convey real and personal property."  42 U.S.C. §1982.  To

establish a claim under § 1982, a plaintiff must show: "(1) [he] is a member

of a racial minority; (2) defendant intended to discriminate on the basis of

race; and (3) the discrimination involved one or more of the activities

8

enumerated in the statute[]." *Grajales v. Mendez*, No. 11 CV 3069, 2011 WL 3163032, at *1 (E.D.N.Y. July 25, 2011) (citations omitted). The plaintiff must further show that the "defendants' actions were purposefully discriminatory and racially motivated." *Id.* (citation omitted).

Here, even assuming the Theater has standing to assert a § 1982 claim, which defendants dispute, the claim would nonetheless fail. Specifically, while the Theater claims broadly that defendants have violated its rights under § 1982, it has alleged no facts or offered any evidence even remotely suggesting that race played any role in the decision to remove the marquee, or in any other respect. Accordingly, the Theater's complaint is dismissed insofar as it asserts a claim under § 1982.

**B.  Section 1983 Claims**

**1.  Standing**

Defendants next argue that the Theater, by virtue of its corporate status, lacks standing to assert its claims under § 1983 for violations of the Due Process, Equal Protection, and Privileges and Immunities Clauses. (*See* Defs. Mem. of Law at 2, Dkt. No. 63:17.) As to the Theater's due process and equal protection claims, the court disagrees. As the Theater correctly observes, a corporation, which is a "'person' within the meaning of

the [E]qual [P]rotection and [D]ue [P]rocess ... clauses," *Grosjean v. Am. Press Co.*, 297 U.S. 233, 244 (1936) (citation omitted), may bring suit under § 1983 for due process and equal protection violations, *see, e.g.*, *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277 (7th Cir. 2003) (equal protection); *Fulton Mkt. Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978) (due process). Thus, contrary to defendants' assertions, the Theater's corporate status does not itself preclude the Theater from bringing a § 1983 action for violations of due process or equal protection. However, to the extent the Theater is attempting to vindicate rights afforded by the Privileges and Immunities Clause of the Fourteenth Amendment through § 1983, such a claim would necessarily fail. *See Grosjean*, 297 U.S. at 244 (explaining that the Privileges and Immunity Clause does not apply to corporations because "a corporation ... is not a citizen within the meaning of [that] clause"). Accordingly, defendants' motion seeking dismissal of the Theater's equal protection and due process claims on standing grounds is denied, but is granted as to any claims being asserted under the Privileges and Immunities Clause.

**2.     Municipal Liability**

Defendants next contend that the Theater's claims against the City of

Troy should be dismissed under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), arguing that no basis for municipal liability exists.  (*See* Defs. Mem. of Law at 3-4, Dkt. No. 63:17.)  The court disagrees.

It is well settled that municipal liability may be established based on the single acts of a municipal official with "final policymaking authority." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000).  "A court can identify individuals who have policymaking authority by their receipt of such authority through express legislative grant, or through their delegation of policymaking authority from those to whom the power has been expressly granted."  *Lathrop v. Onondaga Cnty.*, 220 F. Supp. 2d 129, 136 (N.D.N.Y. 2002) (citation and internal quotation marks omitted).  Further, "the official in question need not be a municipal policymaker for all purposes.  Rather, with respect to the conduct challenged, he must be responsible under state law for making policy in that area of the municipality's business."  *Jeffes*, 208 F.3d at 57 (citations, emphasis, and internal quotation marks omitted).

Here, it appears undisputed that Reeves, as City Engineer, possessed final decisionmaking authority under the Troy City Code with

respect to whether a building or structure should be demolished.  (*See* City of Troy Resp. to Interrogs., at 2, 5, Dkt. No. 66:16.)  Thus, because it was Reeves's decision to remove the marquee, and because that decision appears ultimately to have led to the alleged constitutional violations, the court is satisfied at this juncture that a basis for liability against the City of Troy exists.  Accordingly, defendants' motion as to this issue is denied.

### 3.    Procedural Due Process

The Theater claims that defendants violated its procedural due process rights by "not afford[ing it] a hearing or an opportunity to be heard prior to the demolition of the marquee."  (Pls. Resp. Mem. of Law at 7, Dkt. No. 66:2.)  In seeking summary judgment on this claim, defendants argue that a predeprivation hearing was not required because the condition of the marquee presented a genuine emergency that required urgent action and an adequate postdeprivation remedy was available.  (*See* Defs. Mem. of Law at 9-12, Dkt. No. 63:17.)

"[T]o satisfy the requirements of due process, notice and a predeprivation hearing are ordinarily necessary."  *DiPietro v. City of New York*, No. 09-CV-932, 2010 WL 449096, at *6 (E.D.N.Y. Feb. 2, 2010).  A predeprivation procedure is not required, however, "when there is a

genuine emergency that requires urgent action and an adequate postdeprivation remedy is available." *Id.* (citing *Catanzaro v. Weiden*, 188 F.3d 56, 61-62 (2d Cir. 1999)); *see also WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 51 (2d Cir. 2009). As relevant here, a public official's decision to invoke an emergency demolition procedure without a postdeprivation hearing is afforded "some deference." *Catanzaro*, 188 F.3d at 62. Still, the official's discretion in making that decision is not limitless. *See id.* Indeed, "the due process guarantee is offended" and liability attaches "when an emergency procedure is invoked in an abusive and arbitrary manner." *Id.* In determining whether a public official has abused his constitutionally afforded discretion to invoke the emergency doctrine, the central inquiry is whether "competent evidence allowing the official to reasonably believe that an emergency [did] in fact exist, or that affording predeprivation process would be otherwise impractical." *Id.* at 63. Of course, this inquiry is factual in nature and is therefore "subject to the usual considerations for a district court addressing a summary judgment motion." *WWBITV*, 589 F.3d at 51. Thus, "[s]ummary judgment may not be awarded where there is a genuine issue of fact as to whether officials acted arbitrarily in declaring an emergency." *Id.*

13

Here, in response to defendants' motion, the Theater contends that "the emergency demolition procedure was *not* properly invoked because Defendants did not have a sufficient evidentiary basis to support their emergency finding." (Pl. Resp. Mem. of Law at 7-12, Dkt. No. 66:2.) More specifically, the Theater claims that the decision to remove the marquee was "abusive and arbitrary" since it "was the result of an improper an ill-motivated inspection, because had Defendants conducted a proper and impartial inspection they would have concluded that the marquee was structurally sound and did not require immediate demolition." (*Id.* at 8.)

In support of these contentions, the Theater highlights that defendants "inspection lasted ... thirty minutes and consisted of visual observations *only*"; that although the wire cables and chains attached to the marquee were ornamental and offered no structural support, defendants nonetheless "concluded that the entire marquee had to be demolished because ... the ... cables and chains ... showed rust and were inadequate to support the marquee"; that the marquee was, in fact,  supported by structurally sound, steel beams, which defendants failed to inspect prior to demolition despite the Theater's engineers discovery of those beams; and that "there were alternative methods of supporting the marquee until the

14

structural integrity of the steel beams could be determined." (*Id.* at 9.)

Plaintiffs further highlight that "[t]here were no complaints of falling debris from the marquee"; that "[t]he marquee was not tilted, off-centered or lopsided"; that "[t]here was no indication that the marquee was falling, had unnecessary holes or suffered some extenuating damage that would prompt an inspection by Defendants"; and that Reeves testified that he did not feel that the danger of the marquee collapsing onto the sidewalk was imminent. (*Id.* at 10; Reeves Dep. at 10, Dkt. No. 66:9.)

Given these facts, and the record as a whole, the court is not persuaded that defendants are entitled to summary judgment on the Theater's procedural due process claim. Specifically, in light of conflicting evidence relating to the condition of the marquee, the apparentness of that condition, and the seemingly limited nature and extent of the City's inspection—all of which arguably call into question the competency of the evidence underlying the defendants' decision to remove the marquee and the reasonableness of the decision based on that evidence—the court is presently unwilling to conclude, as a matter of law, that defendants did not abuse their discretion in concluding that the marquee created a genuine emergency. Accordingly, based on the record now before it, the court

denies defendants' motion as to the Theater's procedural due process claim.

**4.      Substantive Due Process**

Defendants also seek summary judgment on the Theater's substantive due process claim.  In support of that claim, the Theater alleges that the removal of the marquee "deprived [it] of [its] right to substantive due process" because the decision to remove it was "arbitrary, capricious and negligent," and that the City's justification for the removal was an "arbitrary, conscience-shocking and/or oppressive pretextual attempt to shut down [the Theater's] business or to drive it out of the City of Troy."  (2d Am. Compl. ¶ 11, Dkt. No. 36.)  The court agrees with defendants that the Theater's substantive due process claim must fail.

As the Supreme Court has made clear, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing [that behavior]."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citations and internal quotation marks omitted); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).

In this case, the Theater grounds its substantive due process claim in the "remov[al], demoli[tion], and destr[uction]" of the marquee. (2d Am. Compl. ¶ 11, Dkt. No. 36.) However, because there exists an "explicit textual source of constitutional protection" against such activity—namely, the Fourth Amendment—the Theater's substantive due process claim must fail. The Fourth Amendment protects against "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. A "seizure of property ... occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992) (citation and internal quotation marks omitted). Where, as here, the government demolishes a building or part of a building, "a seizure results within the meaning of the Fourth Amendment." *DeBari v. Town of Middleton*, 9 F. Supp. 2d 156, 161 (N.D.N.Y. 1998) (citing, inter alia, *Suss v. ASPCA*, 823 F. Supp. 181, 186 (S.D.N.Y. 1993).) Thus, in seeking relief for the "remov[al], demoli[tion], and destr[uction]" of the marquee, (*see* 2d Am. Compl. ¶ 11, Dkt. No. 36), the Theater's claim sounds in Fourth Amendment unreasonable seizure, not substantive due process. Accordingly, the Theater's substantive due process claim is

dismissed.[1]

**5.     Equal Protection**

The Theater's equal protection claim fares no better.  As the basis of

its claim—and in an effort to avoid summary judgment—the Theater

contends that "a reasonable trier of fact could easily infer that because

Defendants violated Article IV of the Code of the City of Troy, which

guarantees protections for those owners whose buildings may constitute a

threat to public welfare, ... [the Theater] was treated differently than other

similarly situated business owners."  (Pl. Resp. Mem. of Law at 14, Dkt. No.

66:2.)  The court disagrees.

"The right to equal protection ensures that all similarly situated people

are treated alike."  *DiPietro*, 2010 WL 449096, at *8 (citing *City of Cleburne

v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "[T]he prototypical

equal protection claim involves discrimination against people based on their

membership in a vulnerable class...."  *Harlen Assocs. v. Inc. Vill. of

Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  However, "[the Second Circuit

has] long recognized that the equal protection guarantee also extends to

---

[1]Even assuming the Theater's threadbare complaint could be construed to sufficiently allege a Fourth Amendment claim, (*see* 2d Am. Compl. ¶ 12(a), Dkt. No. 36), neither party addresses or even mentions it in their submissions, and the court therefore declines to address it at this juncture.

individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Id.* (citation omitted)  To establish such a claim, a plaintiff must demonstrate "that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, even assuming defendants violated the Troy City Code in removing the marquee as the Theater contends, the Theater points to no evidence substantiating its conclusory claim that it was intentionally treated differently than any other similarly-situated business owners.  Accordingly, absent a non-speculative basis to even infer that the Theater's equal protection rights were violated, the Theater's equal protection claim is dismissed.

## C.    Individual Defendants

### 1.    Mayor Tutunjian

The Theater's claim against Mayor Tutunjian must also fail.  As Mayor Tutunjian correctly points out, the Theater has failed to offer any proof or allege any facts establishing his involvement in the removal of the marquee or any constitutional violations allegedly flowing therefrom.  In

19

urging a contrary conclusion, the Theater relies solely on the fact that the Mayor received a copy of Reeves's April 13 letter report advising DeGroote of the marquee's structural issues, and on the Mayor's supposed initiation of and involvement in "consistent harassment by the City and a thinly veiled hidden agenda of making sure the Cinema Art Theater was shut down permanently." (Pl. Resp. Mem. of Law at 16. Dkt. No. 62.) This reliance is misplaced.

Initially, as to the letter, the mere fact that the Mayor received it, as did six other city officials, does not establish or provide a reasonable, non-speculative basis from which a jury could infer the Mayor's involvement in the decision to remove the marquee. Moreover, even if the Mayor's receipt of the letter could indicate some involvement in the decision to remove the marquee, the Theater's complaint and the record as a whole is devoid of any indication that the Mayor acted to intentionally deprive the Theater of its clearly-established constitutional rights, or would have reasonably known that the removal of the marquee under the circumstances could have violated those rights. Thus, even if the letter could support an inference of the Mayor's involvement in the removal, the Mayor would nonetheless be entitled to qualified immunity. *See African Trade & Info.*

*Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 359 (2d Cir. 2002).

The Theater's allegations surrounding the Mayor's past statement and alleged agenda against the Theater also fail to demonstrate a non-speculative basis to infer the Mayor's involvement. In support of these allegations, the Theater points to the circumstances surrounding its shutdown in March 2006, asserting that the City's action was based on "a laundry list of alleged and arbitrary code violations," which the "City ... prevented [the Theater] from addressing," and thus prevented it from reopening. (Pl. Resp. Mem. of Law at 1-2, Dkt. No. 66:2.) The Theater also points to a statement issued by the Mayor a few days after its closing in which he stated, "We hope the business is gone for good." (*See id.* at 2 (quoting Kindlon Aff., Ex. A, Tutunjian Statement at 1, Dkt. No. 66:5).) In the Theater's view, given this backdrop and the fact that the Mayor may have been aware of the marquee's removal, a jury could conclude that the Mayor took part in the alleged constitutional violations. The court disagrees.

Initially, as defendants correctly observe, the Theater's contentions rely solely on facts not pleaded or even alluded to in their complaint. (*See* Defs. Reply at 1, Dkt. No. 67:5.) Moreover, even assuming the Mayor

did desire and seek the closure of the Theater, the record lacks any facts or evidence connecting him to the particular decision to remove the marquee. Thus, to the extent a jury could find in favor of the Theater on the record as it currently stands, such a finding would be based on nothing more than naked speculation and conjecture. Accordingly, the court agrees with the Mayor that the Theater's claims against him must be dismissed.

## 2. Reeves and Garrett

The court does not agree, however, that the claims against Reeves and Garrett are also subject to dismissal at this juncture. In support of their motion, Reeves and Garrett argue that they are entitled to summary judgment on qualified immunity grounds. (*See* Defs. Mem. of Law at 6-12, Dkt. No. 63:17.) As the Second Circuit has explained, "[t]he doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Abromaitis*, 294 F.3d at 359 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In this case, the court has already determined that the failure to afford the Theater a predeprivation hearing may have amounted to a procedural due process violation. Thus, because questions of fact exist in

that respect, and given Reeves and Garrett's involvement in the inspection and decision to remove the marquee, the court is not currently persuaded that Reeves and Garrett are necessarily entitled to qualified immunity.[2] Accordingly, Reeves and Garrett's motions are denied insofar as they seek summary judgment on qualified immunity grounds.

## D.    Damages

Defendants next argue that the portion of the Theater's claim for damages based on the loss of rental use of the marquee should be dismissed because it is too speculative.  (*See* Defs. Mem. of Law at 12, Dkt. No. 63:17.)  While sharing the defendants' skepticism as to the Theater's ultimate entitlement to such damages, the court currently declines to definitively foreclose the Theater from seeking them. Accordingly, defendants' motion as to damages is denied.

## E.    Cross-Motion

Finally, while the Theater claims to be cross-moving for partial summary judgment, (*see* Pl. Mem. of Law at 1, Dkt. No. 66:2), it fails to

---

[2]With specific respect to Garrett, the court is mindful that his involvement in the actions giving rise to the alleged constitutional deprivations appears to be minimal and undertaken at the direction of Reeves.  Nonetheless, because the record is not entirely clear as to the precise nature and extent of Garrett's involvement, the court is presently hesitant to definitively conclude that Garrett is, as a matter of law, qualifiedly immune.

explain the basis of that motion or otherwise specify anywhere in its submissions which issues or claims the motion is seeking judgment on. Accordingly, in the absence of any meaningful explanation, and in light of the outstanding questions of fact discussed above, the Theater's cross-motion for partial summary judgment is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 63) is **GRANTED** insofar as the Theater's claims for violations of 42 U.S.C. § 1982, substantive due process, equal protection, and the Privileges and Immunities Clause are **DISMISSED**; and it is further

**ORDERED** that the Theater's claims against defendant Henry Tutunjian are **DISMISSED** and Harry Tutunjian is **TERMINATED** from this action; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 63) is otherwise **DENIED**; and it is further

**ORDERED** that the Theater's cross-motion for partial summary judgment (Dkt. No. 66) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 26, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge